(41 Misc. Rep. 655.)

RANKINE v. DE VEAUX COLLEGE et al.

(Supreme Court, Special Term, Niagara County. November, 1903.)

1. CHARITABLE BEQUEST—INCORPORATION OF TRUSTEES—POWERS.

Testator by his will appointed certain persons trustees for the purpose of organizing a school to support orphan and destitute children and teach them trades and professions. Thereafter the Legislature constituted such trustees, with other persons, a body corporate, for the purposes expressed in such will, and no other. *Held*, that the corporation had no power to subsequently establish a pay-pupil department.

Action by William H. Rankine against the De Veaux College and others to restrain defendants from establishing a pay-pupil department. Judgment for plaintiff.

Ellsworth, Potter & Storrs, for plaintiff.
John G. Milburn, for defendants.

CHILDS, J. Samuel De Veaux departed this life on the 3d day of August, 1852, leaving a last will and testament, which was duly admitted to probate by and before the surrogate of the county of Niagara, N; Y., on the 13th day of November, 1852. Said last will contained the following provisions:

"I appoint as my Trustees, William H. De Lancy, William Shelton, Peter A. Porter, Richard H. Woodruff.

"I will and bequeath all of my estate, both real and personal, which I am possessed of now and at the time of my decease, excepting * * * to the persons last above mentioned, and their assigns, in trust for the uses and purposes hereinafter set forth and particularly specified, * * * then the residue of my estate both real and personal, is to be made use of by said Trustees in the manner and for the purpose herein set forth, viz.: for the purpose of establishing, founding and maintaining a benevolent institution, to train and support orphan and destitute children; to train them up to industry; to learn them trades and professions; to give them a mental and manual, and a social and religious education.

"Said Trustees will, within five years after my decease, with such other persons as they may think best to associate with them, * * * incorporate under the general law of this State, a benevolent institution for the purposes herein named, or obtain a special act of the Legislature for that purpose, and that immediately after such institution is incorporated they convey and transfer to the Trustees and Managers thereof, all the real and personal estate remaining in their hands, after having provided for and invested funds and securities to meet and settle all the items, amounts and bequests hereinbefore mentioned.

"The buildings, operations and office of said benevolent institution shall be upon lots number thirty-three and thirty-four, of the Mile Reserve, in the town and county of Niagara aforesaid, and that the land of said lots belonging to me shall constitute the farm and domain of said institution."

On the 15th day of April, 1853, the trustees named in said will, together with Elijah Ford, Horatio Seymour, Washington Hunt, Elias Ransom, and Joseph M. Clark, were, by an act of the Legislature of the state of New York, entitled "An act to incorporate the De Veaux College for Orphan and Destitute Children," known as chapter 243, p. 532, of the Laws of 1853, constituted a body corporate, to be the corporation directed by the said will of said Samuel De Veaux, "for the purposes expressed in the said will and no other," subject to the provisions of the Revised Statutes concerning trusts; and by said act the trustees of said corporation were directed "to take charge and possession of the property directed by the said will of the said Samuel De Veaux, to be applied to the purposes aforesaid, and all other funds and real and personal estate whatever that may be acquired by the said corporation, and manage and dispose of the same, and apply the income and avails thereof to the purposes expressed as aforesaid in said will, and to no other." Said act has since been several times amended, but in particulars in no wise affecting the portions thereof quoted.

Subsequent to the incorporation, and in the year 1855, the trustees of said college commenced the erection of a building, for the use thereof, which was completed in the spring of 1857, and opened for the reception of students on the 20th day of May in that year. The students admitted up to and including the 16th day of November, 1857, were 32 in number, and were called "Foundationers." The building so erected in 1855–57 cost the sum of $25,869.88 (which sum

was wholly paid from the income of the fund in the hands of the trustees), and contained accommodations for 60 boys. The school was continued as organized until the year 1868, from which year to the year 1896, inclusive, pupils were received, maintained, and educated in the institution for pay, and were known as "Pay Pupils." In the years 1866 and 1868, additions costing $25,630.81 were made to the buildings of the college, evidently in anticipation of the change of management then inaugurated, under which pay pupils were received. Previous to the erection of these additional buildings, the buildings owned and occupied by the college were ample for all the purposes of the corporation and to fully carry into effect the purposes of the trust under which the same were erected and the college work conducted. Subsequent to the year 1896, pay pupils have not been received into the institution, but the same has been maintained solely for the benefit of foundationers. The number of foundationers from the opening of the institution in 1857 until the present time has averaged about 25.

June 15, 1902, the trustees of the college adopted the following resolutions:

"Whereas, the Sixty-fifth Annual Council of the Diocese of Western New York by resolution recommended that the trustees of the college by resolutions establish a pay-pupil department.

"Resolved, that it is the sense of this board that a pay-pupil department be established in the college and such department hereby is declared to be established."

The plaintiff, one of the trustees of said college, has brought this action for the purpose of procuring a judgment restraining and enjoining the trustees of said college "from establishing such pay-pupil department, or using the buildings, grounds, or other property of said college for the purpose contemplated in and by said resolution." It is insisted by the defendants that it is within the power and discretion of the trustees, as managing body of the college, to carry into effect the provisions of said resolution, and to accept in said college students who shall pay for their maintenance and instruction. And this presents the question as to the power of the trustees, as incidental to the discharge of their duties as such or otherwise, to disregard the plain purpose for which the trust committed to them was created, as well as the provisions of the act incorporating them, which confines their power, definitely and explicitly, to the execution of the trust according to the letter of the will of De Veaux.

Samuel De Veaux, in devoting his fortune to a charitable purpose, had the undoubted right to select the objects of his bounty, and to confine his benevolence to those of his choice; and a careful reading of his will indicates that he gave to the matter serious consideration, and matured a plan in all respects complete, and capable of being carried into execution without amendment or addition—a plan in all respects legal and praiseworthy, as providing for a class incapable, by affliction and circumstances, of caring for themselves; and he had the right to assume that the scheme which he devised, and to effectuate which he provided means, would be executed with fidelity, as well as with due regard to his wishes so clearly expressed. The

85 N.Y.S.—16

title to his estate vested in the trustees for the benefit of the class named, and that class became at once entitled to the whole beneficial interest in the trust estate. No discretion vested in the trustees as to its disposition further than to organize a benevolent institution for the purpose declared in the will; and this was accomplished when chapter 243, p. 532, of the Laws of 1853, was passed, which authorized the trustees and their successors to "manage and dispose of the same and apply the income and avails thereof to the purposes expressed in the will and no other."

There appears to be no ambiguity or uncertainty in the language employed in the will or in the act of the Legislature in defining the scope of the trust, and in limiting the power of the trustees in executing the same. To constitute one a subject for the testator's bounty, the conditions, namely, destitution and orphanage, must exist; and the trustees have no power to dispense with the conditions and accept into the institution provided for that class another. The benefits of the institution founded by the testator were for the orphan and destitute, and it was his right to provide for their maintenance and education separate and apart from any other class; and whether or not we concur in his judgment is of little importance, inasmuch as the provision is legal and may not be overthrown, if the trust created by him is to be executed at all. No citation in support of this proposition is necessary. The law is elementary; and, so far as the powers of the trustees are controlled by statute law, it is provided by the Corporation Law (Laws 1892, p. 1804, c. 687, § 10) that "no corporation shall possess or exercise any corporate powers not expressly given by law or not necessary to the exercise of the powers so given." It will not be claimed that any power to accept pay pupils in De Veaux College is expressly given by the statute incorporating the same, and it is not suggested that the reception of such pupils is necessary to the exercise of the powers vested in the trustees.

It is conceded by the defendants that De Veaux College was created as a benevolent institution for certain defined purposes, and that the trustees possessed no power to divert the trust estate to other purposes; but it is argued that, if "pay pupils are admitted to the college, a profit would be derived therefrom which would relieve the income of the trust estate to that extent from a disproportionate burden of such fixed charge, and set it free for the support and education of additional foundationers. If pay pupils were taken on this principle, there would be no diversion of the property or its income for the purposes of the trust, * * * when neither the conditions nor the income are encroached upon for the benefit of pay pupils at the expense of foundationers." As we have seen, De Veaux, who created this trust, defined the use to which the trust fund should be applied. He directed that the buildings to be erected for the purpose of carrying the trust into execution be placed upon a particular lot of land, the title to which passed to his trustees under the will; and the use of this land and the buildings thereon for the purpose of maintaining a school for pay pupils would be a diversion of the same from the specified purposes of the trust.

The scheme proposed by the trustees, as evidenced by the resolu-

tion of June 5, 1902, is to establish a boys' boarding school, the conducting of which, if we are to consult the records of the college during the period from 1868 to 1896, it may be assumed would constitute the major part of the business of the corporation, and the maintenance and· education of the foundationers the minor part. Such venture is in no sense incident to the execution of the trust, and would necessarily be affected by the usual risks incident to conducting a boarding and day school as a business enterprise, and thus liable to endanger the trust fund. It would, in some sense, overshadow and suppress the benevolent features of the institution, and deprive the unfortunate class intended to be benefited of the special care and attention of the officers and teachers in the institution, whose attention would naturally be taken from the real purpose of their work and directed to the building up of an institution for purposes not contemplated by him who created this trust, whose purpose it was to found a benevolent institution and not a commercial enterprise. It may be that such a school as it is proposed by the trustees to create would be useful, but it is not necessary. All the facilities which it would afford are within the reach of those who can command the means to pay for the same.

Testimony was received on the trial tending to show the annual cost of maintaining pupils in the college and the additional cost of the increased facilities necessary to carry into effect the proposition to receive pay pupils. It has not been deemed necessary to discuss the defendants' contention that the "Foundationers" would be benefited by turning a school created for their sole benefit into a school for the reception of another class of pupils, and wholly changing the object and purpose of their benefactor, further than has been done, for the apparent reason that the conclusion has been reached that no power has been lodged in the hands of the trustees to make such a change, and that the attempt on their part so to do is without any authority. If any good purpose could be served by such a discussion, it would probably appear that the contention of the defendants in this behalf is without merit. In any event, with questions of expediency we have nothing to do; neither can we change nor modify the plain mandate of the trust, even though it should appear that the purpose of him who created the same would be better served by departing therefrom (which does not appear to be true in the case at bar). The law will not permit it, for the manifest reason that it is for him who creates a legal trust to define and limit the purposes thereof. Matter of Hoysradt, 20 Misc. Rep. 265, 45 N. Y. Supp. 841.

In any view of this case, the proposed action of the trustees of the college in opening the same for pay pupils is in excess of their power and without authority, and the plaintiff is entitled to the relief demanded in the complaint.

Judgment for plaintiff.